## Louisville Ry. Co. v. Prather.

May 29, 1942.

W. Clarke Otte and James S. Shaw for appellee.

OPINION OF THE COURT BY JUDGE FULTON—Reversing.

The Louisville Railway Company appeals from a judgment for $3,308 obtained by appellee, J. Gilbert Prather, for damages for personal injuries sustained when he fell in alighting from one of appellant's street cars and was dragged some distance by the car. The principal ground urged for reversal is that the verdict was flagrantly against the evidence.

Prather, who was an employee of appellant, testified that about 1:10 o'clock A. M. on the night of March 10-11, 1939, he caught a westbound car at 13th and Market Streets in Louisville and rode to 24th Street, where the accident occurred when he alighted from the car; that one passenger got off the car ahead of him and that as he stepped down off the step of the car to the street, and while holding to the bar, and with one foot on the step and the other on the street, the step raised and jerked his left foot from under him, also jerking his hold loose from the bar; that he fell straight down with his foot doubled up under him and that his arm was caught between the step and the car when the step folded up against the car, resulting in his being dragged down the street when the car started up. The step was mechanically operated and was supposed to be timed so that it raised and folded against the side of the car two seconds after the passenger's weight is removed from it.

There was no other eyewitness to appellant's fall except the passenger, Mercer, who alighted in front of Prather and saw him being dragged by the car after he fell. When the car stopped, Prather was able to get up by himself and walked to his home with Mercer, who lived about a square from him. Mercer gave Prather his name and address that night. A former employee of appellant testified for Prather to the effect that some of the

rods connected with the mechanism controlling the raising of the treadle step and folding it against the side of the car were worn so that it was possible that the step would not operate properly and that by reason of this condition the step lacked several inches of folding completely against the side of the car, thus making it possible for appellee's arm to be caught between the step and the car. This is all of appellee's testimony of any substance having any material bearing as to the cause of his fall.

It is appellant's argument that the verdict is flagrantly against the evidence because it is based solely upon Prather's testimony, which is so self-contradictory and at variance with all the other testimony and so weakened by its patent untruthfulness in many particulars as to be unworthy of belief and insufficient to support the verdict. That this position is well taken, we think is revealed by appellee's admissions of previous contradictory statements made by him, by appellant's evidence as to previous contradictory statements by him and by evidence of other witnesses introduced by appellant showing the untruth of appellee's testimony and the improbability that appellee's fall occurred in the manner claimed by him, as will be seen from the following statement of such evidence.

The motorman testified that after he stopped the car and got out Prather said to him that he was on the street when he fell, that there wasn't anything wrong with the step, that it was not his fault or the motorman's fault but was the fault of the slick street. Two other witnesses, employees of appellant, heard this conversation and in effect substantiated the motorman. Both of them testified that Prather said he slipped on the street and fell and caught his arm in the step while trying to catch himself. Two days after the accident Prather gave a signed statement to a claim agent of appellant, which was as follows:

> "I hopped off of the step and when my feet struck the street my feet slipped and I fell backwards and my left arm between the wrist and elbow went into the folding step and the arm was caught when the step folded up. I did not slip until my feet reached the street, when they slipped. The treadle door, as far as I know worked all right and had nothing to do with my falling."

Prather attempted to avoid the effect of this statement by claiming that because of shock and taking opiates he had no recollection of signing it or of the claim agent being at his home, although he admitted the signature was his. However, Prather's physician testified that he only gave him morphine twice in small doses and that he was conscious at all times, it being clear from this testimony that Prather was in no such condition as to be incapable of remembering the signing of the statement.

Two months after the accident Prather was examined for insurance by Dr. Likens, a completely independent, disinterested physician and pursuant to this examination Dr. Likens made a written report to the insurance company as follows:

"This man claims that after having stepped from a street car to the street he slipped and fell backwards towards the car, and his left arm was caught in the folding step * * *."

Dr. Likens further testified that Prather told him he had completely left the car and taken one step when he slipped on the street and fell. J. G. Thomas, a restaurant keeper, testified that six months after the accident Prather told him that he slipped on the street and fell after he had gotten off the car step.

Prather's deposition was taken as on cross examination in January, 1940. In that deposition he testified with great positiveness that the step raised with him while he was still standing on it with his full weight on his left foot and before he put his right foot on the ground. It was proven on the trial that it was impossible for the step to raise with any substantial weight on it. In fact, appellant's master mechanic and another mechanic testified that they tested the step of this particular car on the morning after the accident and that it would not raise with even a twenty pound weight on it. After giving the deposition, Prather apparently realized the incredible character of the testimony and when the case came to trial testified, as indicated above, that he had stepped to the ground with his right foot (thus necessarily having most of his weight on this foot) and with only his left foot on the step when it raised.

Thus it is seen that at the time of the trial Prather repudiated both his former versions, (1) that he had slipped on the street and (2) that the step raised while

his entire weight was upon it, and on the trial claimed that the step raised and tripped him after he had placed one foot on the street.

Another instance showing the unreliability of Prather's testimony is revealed by the fact that in giving the deposition above referred to he was asked if he knew any of the passengers on the car, or the names of any of them beside the two employees of appellant, and he stated that he did not. In making this inquiry appellant was, of course, endeavoring to locate Mercer, the passenger who got off the car in front of Prather. Although Prather thus denied knowing Mercer's name he admitted on the trial that he had known Mercer's name for several months before giving the deposition and that he had seen him several times. Prather's testimony in this regard was very evasive and it was only after repeated pressing that he finally admitted knowing the name of this witness.

Other contradictions and evasions appear in Prather's testimony but we think the situation depicted is sufficient to demonstrate that his testimony was so self-contradictory and so weakened by his evident readiness to testify to any fact that he thought would be in his favor and against appellant that it was wholly insufficient, uncorroborated as it was, to justify a verdict in his behalf.

The repeated statements of appellee, some of them at least undoubtedly made, were not only contradictory of his testimony on the trial but, since he was a party, were substantive evidence against him that his fall was not due to any negligence of appellant but to his own carelessness. The evasions, contradictions and untruths revealed in his testimony are such as to render it of little, if any, value, so that when it is considered in connection with the other positive testimony of appellant that the car step was in good working order, there is no escape from the conclusion that the verdict was flagrantly against the evidence. We have no desire to encroach on the province of the jury and it is generally with reluctance that we set a verdict aside as being flagrantly against the evidence, but the present case is one calling for such action if ever one did—we would be remiss in our duty if we refused to set it aside.

In view of our holding that the verdict was flagrantly against the evidence, the trial court should have di-

rected a verdict for appellant. Nugent v. Nugent's Ex'r, 281 Ky. 263, 135 S. W. (2d) 877.

Other grounds for reversal are urged but it is unnecessary to consider them in view of the conclusion reached.

Judgment reversed with directions to grant the appellant a new trial and for further proceedings consistent with this opinion.